IN THE US DISTRICT COURT

FOR THE

EASTERN DISTRICT OF VIRGINIA



FILED

MAR -10 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

DARUS ZEHRBACH

    PLAINTIFF

VS                                                        CIVIL ACTION: 2:22cv113

MARK J LARIA,

JEFTE CABANTAC OWEN

and

MULTIPLE UNKNOWN OR AS OF YET BY NAME NOT IDENTIFIED

US CUSTOMS NORFOLK AND US DOT NORFOLK AGENTS

Personally, individually, jointly, and severally

## COMPLAINT

NOW COMES PLAINTIFF, Darus Zehrbach, filing Pro Se, and files this Complaint as follows:

I.

Plaintiff files this Complaint as

1) a (Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) style case against the agents in the Norfolk Customs who acted outside of the scope and

authority of their positions, counter to the law governing their activity, and with criminally intent to violate the rights of Plaintiff. Said agents engaged in activity that is subject to criminal misconduct charges in the state of Virginia for vehicle theft and engaged in fabrication of records and acts of criminal fraud and coercion.

2) Further, this Case is in regard to the Defendants for
- Criminal and general misconduct
- Callous Indifference arising to deliberateness
- Gross incompetence
- Falsifying evidence and committing acts of fraud and creating a fraudulent record to protect themselves against actions by their superiors and or in lawsuits.
- Acting to seize and bar entry to shipments for which they have no complaint or cause of action, but only as a willful act of malice in retaliation for instigating an investigation at the Senate and Director of the DOT level.
- Conspiracy to commit and to cover up misconduct.
- Taking extreme time to clear the customs of the container in question spanning 3 months, where the evidence indicates this was done to give them time to fabricate a defense and or is part of a pattern of misconduct by Customs to put containers into inspections lists so they can take off unauthorized holiday time and work off the backlog later so that they appear to be doing their work.
- Acting to force Destruction or ReExport of goods that Customs damaged while "joy riding" in an act of unauthorized vehicular theft so that the damage cannot be seen and used against them.
(Said joy riding has been done by US Customs and DOT offices twice before this instant case:
    1. causing the total destruction of one racing motorcycle while accruing miles of driving on the speedometers before throwing the trashed motorcycle back in the container on its side.
    2. burning the tires off of an exotic Italian car in repeated drag strip burnouts while tearing out the clutch and adding 72 miles of driving from the time it went on the ship, then putting the car back in the container leaving the ignition on to destroy the battery and several relays. The car came out of the container with more gas in the tank than when it left to sea.

3) Plaintiff asserts that Defendants have violated his rights and the 1st, 4th through the 8th Amendment rights and broken the laws and rules established by the USA for the treatment of imports, and the DOT certification and import rules and or failed to abide by them.

4) Plaintiff further seeks to force a clarification of the rules and procedures given the threat of criminal action for failing to agree to the Defendants declared view of the law, given threat of by Seizure and destruction of future shipments, and to establish grounds for all future actions against Defendants should they continue in their misconduct.

5) Plaintiff seeks to compel a clear set of guidelines for import of his goods not subject to sudden whims and changes of opinions and rule interpretation, and or arbitrary interpretation as occurred in this instant case after 14 years of importing the same goods in the same way.

Plaintiff will establish that the parties have no immunity and acted with clear intent to engage in misconduct, and then to cover up said misconduct (given probes by US Senators, and DOT Administrators) by engaging in further misconduct.

Plaintiff has exhausted all normal legal remedy via asking the Defendant's to reconsider in filings and having customs brokers file correction requests. Plaintiff made multiple attempts asking Defendants to consider their blunders and provided the documentation that they were acting wrongfully. However, the Defendants decided to stick their decision down Plaintiffs throat and refused even one word of discussion. There is no alternative to this Bevins civil rights action that can cover the criminal behavior and or acting outside of the scope and authority of their jobs, and or their acts of malice.

Plaintiff, to aid this Court, and in recognition of his status as Pro Se has more fully explained the issues than a lawyer might briefly state and added exhibits to document the validity of his claims.

II.

Plaintiff Zehrbach is the owner of the goods that is (or perhaps were already destroyed by Defendants) in the container of import goods referenced below as a sole proprietorship. He is the Party who made all Complaints to Customs/DOT. He is further, the President of the Z Electric Vehicle Corporation, which is not the owner of the goods, but was acting on Plaintiffs personal interests to be the registered importer of said goods. He is the issuer of the check to this court to file the case. He is the person responsible for refunds to the elderly and disabled who put deposits on the vehicles. He is therefore the victim, and uniquely qualified to be in possession of all documents and has the detailed knowledge of the misconduct and to be the Plaintiff. Moreover, Plaintiff has previously grievously been injured by DOT actions resulting in sanctions against DOT employees. Plaintiff was asked to be on the DOT rule making advisory committee and has knowledge of the rules and regulations.

III.

This case arises due to the import of one container (Bill of Lading: HLCUTA12108DLEK8) which contained 3 types of goods as listed below. Customs declared and or raised no objection to type 1 and 2, initially but demanded that type 3 be destroyed or re-exported. By this initial assessment, they should have released the type 1 and 2 goods immediately. But they chose later to maliciously demand all goods be destroyed or exported when Plaintiff tried to reason with them and to show evidence they were wrong, and started Senator and DOT DC investigations into their misconduct. Acting in further misconduct, Defendants then ordered the goods that have no legal reason for bar to be destroyed or exported also.

As of Feb 22, Customs informed Plaintiff that they were holding the first 2 classes of goods as hostage until they could confirm that the 5 Mobility Scooter trikes were being exported and still threatening to destroy or re-export those 2 classes also despite knowing they were legal to import acting outside of the law in prickish malice.  They subsequently to Feb 22, ordered everything out of the country.

Said container contained three types of goods.

1) 4 Foot Pedal electric Bicycle designated by the HS shipping code 8711.60.00 as so being and by a Declaration (Exhibit __1__ stating that the vehicles
    "EBIKES
    These vehicles are pedal bicycle fitted with an auxiliary electric motor and battery.
    They are not motor vehicle as defined under the Motor Vehicle Safety act. (FMVSS)
    The vehicles / equipment item was not manufactured for use on a motor vehicle or is not an item of motor vehicle equipment"
2) 2 Boxes of parts for Mobility Scooters designated in the Customs filings as Mobility Scooter Parts by the HS Code 8713.90.00.30 which is "Carriages for Disabled Persons whether or not motorized or otherwise mechanically propelled".
3) 5 units of Mobility Scooters designated in the Customs filings as Mobility Scooters by the given HS Code 8713.90.00.30 which is "Carriages for Disabled Persons whether or not motorized or otherwise mechanically propelled". Customs was additionally given sales brochures for the vehicle, USDA classification, and an instruction from the US Attorney General as to Mobility Scooters.

By the attached (Exhibit _2_) Customs Declaration of HS Codes as they must look at and determine tariff rates, the vehicles and parts, each and every one of them were not motor vehicles and not subject to the Federal Motor Vehicle Safety, Bumper, and Theft Prevention Standards or the equipment is not part of a system, part, or component of a motor vehicle and not an item of motor vehicle equipment subject to the Federal Motor Vehicle standards.  This entire problem with Defendants starts with the problem that they refused to read the vehicle classification and to recognize the vehicles were not subject to the Federal Motor Vehicle Standards. They just had no justification to consider the Mobility Scooters as subject to the FMVSS rules.  They acted illegally and now are striving to cover it up and punish Plaintiff. Defendants are now engaged in a wild cram it down Plaintiffs throat campaign reversing themselves again on 3/2/22 stating that they will destroy or re-export all goods, even all that they have never claimed were subject to any reason not to allow entry.  Just prickish malice at its extreme.  At each and every point in this case, Defendants have failed and refused to state why they chose to consider the Mobility Scooters as motor vehicles and subject to the FMVSS rules.  Every chance for explanation and or correction has been refused.

Defendants further have acted in strident actions with demands for 24 or 48 hour actions, (while taking 3 months themselves to make their inspection and complaint clear) in the midst of Covid 19 work at home conditions for the Customs brokers. The Defendants are deliberately creating demands impossible to fulfill in such short times to further their misconduct.

Despite flagging the container for inspection at the end of November 2021 or first of December 2021, the Defendants did not bother to tell Plaintiff about any test or any problem for well into 2022. This despite the fact that it was learned from the Senator Investigation and emails with the DOT Deputy Administrator, that the claim of improper entry arose not later than 1/27/22. Customs sat on the information for months. Plaintiff asserts that this was in part to buy time to figure how they would cover up the misconduct.

IV

Upon Protest by Plaintiff, the Defendants set out to construct a case that the 5 Trike Mobility Scooters were road going motor vehicles and that they did not meet the Federal Motor Vehicle Safety Standards (FMVSS) rules so they could justify ordering them out of the country. It as if they received a shipment of carrots, but decided to call the carrots guns or ammo and then denying entry for not meeting the firearms laws.

As Defendant's first justification to this misconduct, Defendants acted either in extremely gross negligence, or a demonstration of extreme mental deficiency or grasping for a defense for their misconduct. They declared in their report to the investigating DOT Director of Governmental Affairs details showing that they either are so incompetent that they cannot tell the difference between a bicycle and a mobility scooter, or they fabricated a claim to defend their position by claiming that Plaintiff made a false statement as grounds for denying the entry of the vehicles. In the DOT letter to Senator Manchin in regards to the investigation Defendants claimed that they took photos inside of the Mobility Scooters to show that they did not have foot pedals like a bicycle and claimed that the Declaration for the Bicycle in exhibit _1_ noting foot pedals was for the Mobility Scooters, and therefore a false statement by Plaintiff. It was in fact a calculated misdirection and an act of fraud, a false statement by Defendants claiming the Bicycle Declaration should have applied to the 5 Mobility trikes.

This Court should recognize that both the parts and the mobility scooters are listed as the same class of goods under the same HS Code, being for off road, not subject to Fed DOT FMVSS rules. But in a clear example of arbitrary or wrongful enforcement, Defendants allowed one to enter and barred the other.

P5

V.

Upon being served with a demand to destroy or export the Mobility trikes, Plaintiff attempted to clarify the case and help Customs realize the error by filing a "Customs Manipulation" form to ask for release of the bicycles and parts. Customs had not claimed before to have any issue with these entering. But Customs instead responded with a statement that the Manipulation was not what they asked for, they were going to punish Plaintiff by ordering everything out of the country, legal or not. By Letter dated 2/22/2022 Defendant Laria ordered all goods excluded from entering the USA unless the 5 Mobility trikes that had been taken joy riding were exported. However, despite providing evidence to Defendants that the 5 Mobility trikes had been booked for a ship to India, Defendants failed and refused to release the other goods and refuse all goods.

It is indisputable that the Defendants illegally refused to allow entry of the Bicycles and Parts for which there can be no reason to deny except out of prickish malice, or as a club to force export of the damaged trikes, and to keep Plaintiff from accessing the container to view the damage caused by the joy riding of the vehicles. They have failed and refused to mitigate damages and failed and refused to follow the law and made false statements about their refusal to allow entry.

VI.

To make it absolutely and indisputably clear that the 5 Mobility Trikes were in fact Mobility trikes, not subject to FMVSS rules and legal to enter the USA, such that only by false claim Customs were fraudulently rejecting them, Plaintiff delivered to Defendants sales brochures of the vehicles as Mobility Trikes (Exhibit _3_), a copy of the FDA designation of the vehicles as Outside 3 wheeled Mobility vehicles (Exhibit _4_), and a copy of the US Dept of Justice statement that the vehicles were to be treated as Mobility Vehicles Exhibit _5_, to show that Customs had wrongfully categorized them. Defendants disregarded all evidence including the US Dept of Justice instructions, and hardened their stance to cause the vehicles to be exported or destroyed. Defendants indisputably had complete evidence the vehicles were exempt from FMVSS rules as Mobility Scooters, but acted to criminally disregard to cover up their joy riding.

Plaintiff further operates a company which is a DOT/NHTSA recognized manufacturer, empowered to manufacture and or make vehicles fully FMVSS under the 2 step or more manufacturing process. Defendants were provided a copy of the assignment by DOT/NHTSA assignment of a WMI or Vin sequence power for making vehicles. Exhibit _6_. Said company is further listed on the NHTSA Identify website system as a manufacturer. Exhibit _7_ Plaintiff offered that even if Defendants refused to properly categorize the trike vehicles as exempt from DOT regulations, he could make them FMVSS compliant when the vehicles were finished as allowed by law. Defendants

refused any and all options and pathways. If the Defendant's goal was to just insure that a legal vehicle was going to be in the USA, Plaintiff made sure that they had three legal paths. Either properly classify the vehicles as Mobility Scooters, or as a LSV and not subject to the FMVSS, or let Plaintiff complete them to FMVSS standards as the law allows.

Defendants were insistent on destruction or re-export and ignored any and all evidence that they were wrong, in complete conflict with the Mobility Scooter documentation, and the ability of Plaintiff to complete the vehicles, the Defendants fraudulently claimed that the vehicles were not manufactured to meet the FMVSS rules as an act of misdirection. They claimed that importation would violate 49 USC @ 30112(a)(1). The issue is that this is a fraudulent statement in its simplicity. What Defendants specifically and attempted to mislead are the sections under **(b)NONAPPLICATION.**—This section does not apply to— and list a number of exemptions. Further, on the DOT import declarations form HS-7 are 13 options alone, and they do not all require finishing before import. Specifically, the vehicles such as the bicycles and the Mobility trikes are exempt as "The vehicle was not manufactured primarily for use on the public road and thus is not a motor vehicle subject to the ---". Defendants in full knowledge of the trikes were Mobility Vehicles by the HS Codes, the Attorney General instruction, and the brochure designating them as Mobility Scooters, created a lie and fraudulent reason for refusing to allow entry of the vehicles.

The reason for such a stance is that Defendants had been caught illegally joy riding the vehicles and had damaged them. So they were trying to hide the evidence and force the vehicles out of the country.

Plaintiff will show that he been working with DOT since mid-1980s such that not once in 42 years has anyone ever taken control of a vehicle without authorization. Plaintiff has filed the same import paperwork since 2008, or 14 years in a number of ports, and there was no problem. In this case, the only thing that has changed is that the vehicles were joy ridden by Norfolk customs and damaged and the Defendants engaged in misconduct to cover the situation up. Prior precedent of legality of the shipment is documented by the 14 year history of importing the same type and category vehicles.

VII

The Defendants knew that they were acting outside of the law when they made the claim that importation would violate 49 USC @ 30112(a)(1). Said claim is willfully and calculatingly fraudulently and claimed as an excuse as the claim conceals the exemptions noted above. Further, it appears that they also knew of or considered the exemption granted for low speed vehicles in 1988 as part of their scheme. Defendants

as self- proclaimed experts in DOT / NHTSA rules knew or should have known of the laws and the exemption from 49 USC@ 30112a

**National Highway Traffic Safety Administration**

**49 CFR Part 571**
**[Docket No. NHTSA 98-3949]**
**RIN 2127-AG58**
**Federal Motor Vehicle Safety Standards**

The Federal law stated that "Under current NHTSA interpretations and regulations, so long as golf cars <u>and other similar vehicles</u> are **incapable of exceeding 20 miles per hour, they are subject to only state and local requirements** regarding safety equipment." The 5 trike mobility vehicles which the Defendants have refused to allow only run 20 mph.

There was a rule change later to allow not just the up to 20 mph speed vehicles, but to allow up to 25 mph, but those which go 21 or more mph are considered motor vehicles. So the Defendants set out to fabricate a fraudulent scheme to claim that the vehicles could be barred for running 21 mph or more. So they claimed that during their joy riding, they reached 22 mph. There was no test, just a joy ride. They had not notified anyone of a test, they were not an authorized testing group, they did not have the permission of Plaintiff, they did not have speed testing equipment, or run any test in accordance with DOT rules and procedures for 3 wheeled motorcycles

Plaintiff asserts that the claim that the vehicles run 22 mph is a deceitful, calculated criminal act as the Defendants knew exactly when they so stated it, that the vehicles were exempt from the DOT rules as it did not exceed 20 mph in a true test. So they claimed 2 mph over the old rule in an effort to conceal their misconduct. But they did not do a true speed test, and they did not account for speedometer error or run a timed and marked mile speed test. Thus by their own ignorance, they have verified that the vehicles are not subject to the DOT rules, and there are no grounds for barring entry on the vehicles. Further, as the Final Rule states the vehicles "**are <u>subject to *only state and local requirements*</u>**". This rule states that the Defendants had no business whatsoever even considering the vehicles as it is a state matter. This act is in addition to the misconduct to disregard the Customs declaration as Mobility Scooters, along with the US Attorney instruction letter and sales brochure.

Defendants had 3 absolutely clear options to allow the trikes to enter.
1) Either exactly as they ruled on the bicycles, that they were not for public roads being Mobility Scooters,
2) or they could have allowed the vehicles to be finish manufactured as full FMVSS legal on road vehicles, pursuant to the WMI of Plaintiff and his historical stature as a 2 step manufacturer.
3) or they could be imported under the 49 CFR Part 571LSV rules as not more than 20 mph vehicles not subject to FMVSS rules and regulations

Instead, Customs sought malicious destruction or re-export. It makes no sense that the Defendants deemed the bicycles off road and exempt, but decided to not take that same option for the trikes, even when confronted with all Declarations and documents, or that they would fraudulently claim a speed 2 mph faster than what they thought the law allowed. Further, the Defendants stated to the DOT DC Director that they did not allow the option to finish the vehicles as legal road vehicles as they claimed that the vehicles were too close to being already finished and legal. This is a rather weird statement, especially given the arbitrary nature of such a pure opinion call where they as Customs are not vehicle manufacturers as is Plaintiff, given the evidence of the Unfinished Vehicle document, the LSV law as noted above exempting the vehicles even further, and the status of Plaintiff as a two step or more manufacturer. While the law was originally written to handle gas vehicles, the rules as to how they apply to electric vehicles have never been updated for Incomplete Vehicle. It takes longer to write the software for the vehicle computers than it took to put an engine together. But even knowing this, Defendants they chose instead to hid, lie, conceal, and take the hardest stance possible with willful intent and malice to harm Plaintiff to the maximum level possible.

VIII

Even if Defendants by blunder demanded that the vehicles be finished to compliance with FMVSS rules (and not a criminal cover-up of their illegal testing and fraud) after first deliberately ignoring all of the evidence of the 5 trikes being Mobility Scooters not subject to the FMVSS rules, they deliberately ignored 49 CFR Part 568 - VEHICLES MANUFACTURED IN TWO OR MORE STAGES - all incomplete, intermediate and final-stage manufacturers of vehicles manufactured in two or more stages. Plaintiff produced the incomplete assembly in China, it is also the same company that per the CFR take responsibility for the final vehicle completion to make it conform to any applicable FMVSS rules. It is only at that time that the vehicle must be fully labeled and assembled to meet the rules. As was noted on the DOT form H7-7 for import, the vehicles were all incomplete, not fully assembled. **Per 49 CFR § 568.6 - Requirements for final-stage manufacturers.** "Each final-stage manufacturer shall complete the vehicle in such a manner that it conforms to the applicable standards in effect on the date selected by the final-stage manufacturer, including the date of manufacture of the incomplete vehicle, the date of final completion, or a date between those two dates. **This requirement shall, however, be superseded by any conflicting provisions of a standard that applies by its terms to vehicles manufactured in two or more stages.**" Defendants deliberately deemed the vehicles one stage manufacturer vehicles instead of exempt Mobility Scooters and acted to ban them illegally.

VIIII

It is documented that the Defendants drove the vehicles not only illegally, but in a reckless and dangerous manner and are believed to have wrecked. The evidence that the Defendants illegally joy rode the vehicles about came as a result of Senator

Manchin's probe into Norfolk Customs misconduct, and the reaction of the DOT Director Thaniel in his letter of 1/27/22 statement that the ( half finished / unfinished vehicles, with the brakes not connected, the suspension not all installed), was to driven to such speeds as to "becoming unstable".

US Customs or DOT Norfolk is not a DOT testing or roadworthy assessment group. They lack the designation of that ability by the DOT, the training, the tools and equipment. Vehicles are not allowed to be just taken out of containers and driven around for the fun of it or at will and there is no provision for assembly of vehicles by untrained workers to a running state so driving can be done. The expertise the men had was most clearly demonstrated by their total confusion reading the Declaration for the Bicycles, assuming somehow then that the Declaration for 2 wheel Bicycles applied to 3 wheel Mobility Scooters, then taking photos to show that the Bicycle parts or pedals were not located in the Hand Control only Mobility Scooters to send to the DOT Deputy Adm.

There was no notice of a test given to Plaintiff, no copy of all test results and documentation, no record created of test conditions, standards.   The so called test was nothing but an illegal joy ride.

Because of prior problems with Customs playing and removing vehicles from containers, joy riding, crashing them or breaking them, the 5 Mobility Trikes were not finish assembled to prevent driving. Further, Plaintiff took photos of the vehicles in the containers when they left his non USA factory so that misconduct could be documented. Further, the power was not hooked up on the vehicle, the computers had not been programed, the brakes were lying on the floor and not connected, suspension parts had not yet been fitted.   Plaintiff notified them of this fact by the provision of an Incomplete Vehicle Document and stated that the vehicles already identified by their HS Codes were Mobility vehicles not subject to FMVSS rules nor DOT testing, or joy riding.

But Defendants disregarded the clear and obvious incomplete manufacturing or vehicle condition.  They told DOT Director Thaniel that they drove the vehicles and that they drove them at high speed (22 mph) with the vehicles "unstable".  With so many pieces disconnected, suspension parts missing, and the brakes lying on the floor, they well should have been.  Defendants clearly engaged in reckless activity, endangering property and people out for the day of joy riding.

X

When the Mobility trikes are shipped, to secure them properly in the container, and to protect against further Customs misconduct instances of driving the vehicles for a joy ride, the vehicles are installed into a steel sled and fastened down in that sled in a manner that the vehicles cannot be removed easily and or without procedures and tools

to prevent damage. It takes a fork lift and special fittings to put on the body to prevent damage. At Plaintiff's shop, it takes 3 hours of work at least to get the vehicles out of the sled without damage, to un-crate them, and to put them on their wheels. Counting then the time taken to go joy riding, and the time it took to put the trike back in the container, it took at least 3 men, and least 5 hours of play time away from their jobs to go joy riding. Nearly a days work for 3 men or 3 man days playing, to just "goof off" the work day at the expense of the taxpayer and illegally joy ride in the midst of a shipping crisis in the USA.

It is impossible that the men did not damage the vehicle. This damage is believed to be why Defendants are so vigorously pushing to get the vehicles exported. At worst case, it is guaranteed that the Defendants did not properly repack the vehicle for shipping without damage or so that they would be protected from further damage. If the vehicles are not properly replaced in the sled, bolted/tied down again, and wrapped, they will be damaged further on the trip to India during re export should this Court be unable to address this case before export is forced by Defendants.

## XI

Defendants have indisputably blocked the import of all Plaintiff goods for the future by threatening that they will reject, seize, and cause forfeiture of goods even when as in this instant case, there were no complaints or grounds for such for the Ebikes or Parts. Further, by declaring that they do not care about the law and will rule and do as they please despite the rules of law. Still further, the Defendants have refused to engage in any dialog to explain or substantiate their decisions or claims. The damages of the loss of all future revenue are inestimable.

## XII

The burden of proof is upon the Defendants, not upon Plaintiff pursuant to CFR-2010-title19-vol 2-part 151.16 (i) Defendants must prove that they followed the rules perfectly and did nothing without good and proper cause, or the goods must be released to Plaintiff.

*"(i) Commencement of court action; burden of proof and decisions of the court. Once a court action respecting a detention is commenced, unless Customs establishes by a preponderance of the evidence that an admissibility decision has not been reached for good cause, the court shall grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise."*

> The distinct case of Customs allowing first the bicycles and parts to enter under the given HS codes and class of goods as exempt from DOT FMVSS rules, and then later for apparent malice ruling non entry cannot be good and proper cause.

Never did Customs dispute the HS Codes nor classification of goods for these two shipments. They are only now refusing in prickish malice or by incredible blunder. The goods must be released given the clear declaration and codes.

It is documented that Defendants failed and refused to follow the Declared HS codes and class of merchandise as exempt from DOT FMVSS rules, including the 5 Mobility Scooters, failed to consider the vehicles as off road vehicles, and failed in the alternative to consider the vehicles as exempt sub 20 mph LSV even after claiming to test the vehicles as LSV. All are exempt from DOT FVSS rules. The goods must be released.

It is documented that Defendants failed and refused to allow the vehicles to be finish manufactured even though they had a copy of Plaintiff's WMI / Vin number assignment as a USA finishing manufacturer, had the access to the NHTSA website and Identifier system to see that Plaintiff was listed as a US manufacturer. Further, that the Vin number system showing only a 3 digit production capacity alerted DOT Customs that Plaintiff was a low volume manufacture allowed to "self-certify" the vehicles to FMVSS compliance. Customs/DOT was looking for signs that a company outside the USA to have certified the vehicle, rather than looking inside the USA to the company ran by Plaintiff as the company to do any certification under the multi state rule. Defendants clearly blundered and ignored all documents and declarations.

## XIII

Plaintiff has indisputably been severely damaged and seeks compensatory and punitive damages.

Losses and costs currently known are:

1) The Mobility Trikes were first of a kind, newly designed model of Mobility Vehicle coming to the US for their market launch. They have a cost far in excess of the value as just a Trike, but represent the total cost of 2 years engineering and overhead separate and apart from the vehicle sale cost. Said cost is in excess of $120,000 in engineering man hours alone
2) Charges for an illegal customs inspection and storage and joy ride believed to be $1800.
3) Significant customs agent charges with the final bill expected in excess of $15,000 but not yet fully known.
4) 3 months of storage for the container in the midst of a shipping crisis with the final bill not yet in but believed to be in excess of $20,000.
5) The cost of shipping from China to Norfolk of $18,000

6) Plaintiff is being ordered to destroy the shipment or to export. He has booked a shipment to re-export which will cost and expected $5,000 should the Court relief not be granted.
7) Plaintiff will need to pay 125% tariff and duty on the goods when they arrive in India of $45,000.
8) Plaintiff has no buyers for the vehicles in India where they can only be used as marketing tools. He therefore will lose the value of $45,000 for the vehicles.
9) Plaintiff will need to repay all of the disabled and elderly people who ordered the Mobility Vehicles their deposits on the vehicles and lose the sales revenue of $45,000. Some customers have already asked for refund of deposits based on the news of the misconduct of Defendants.
10) The Ebikes were part of a market launch of the newly designed vehicles and a national program. Discussions to date have revealed market demand to 5,000 vehicles. Said loss of the sales will cost Plaintiff $15 million in sales should they not be released.
11) The Mobility Scooters were already presold, there are 4 more in process for a loss of $ 40,000.
12) The distributor for the Dominican Republic has been waiting for the trike vehicles to arrive in the USA so that he could test drive in WV to consider any redesign, then begin distribution, and Plaintiff had engaged factory space to begin operations to make the vehicles in the USA for export from the USA. The sample order was to be in excess of $50,000 with follow on orders expected to be in excess of $15 million. In the same manner, the agent for exports to South America has been waiting to view the new models for sales to Panama.
13) By the arbitrary and illegal actions, Defendants have barred USA manufacturing and both current and future manufacturing in the USA.

XIIII

WHEREFORE, for all of the good reasons stated above, Plaintiff prays that this court will Order that:

1. Order the immediate release of all goods seized by Defendants
2. Defendants did improperly and illegally deny entry of the vehicles, each and every type to be allowed to enter the USA
3. Defendants did improperly and illegally engage in a cover-up of misconduct.
4. Defendants did improperly and or illegally remove Plaintiff's vehicles from the shipping and drive them.
5. Compensatory damages in the amount of $32.5 million
6. Punitive damages in the amount of $100 million
7. Defendants having refused to consider all of the evidence that the vehicles were not subject to DOT FMVSS, and threatened Plaintiff personally with further seizures and even criminal threats, must provide a distinct plan to Plaintiff detailing how he may in the future import such goods without risk that Customs

again will fail to properly do their job in a legal manner and or recognize vehicles by their proper class.

Respectfully submitted.

Darus Zehrbach                   Date 3/7/2022

Plaintiff, Pro Se